UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
────────────────────────────────────────X

WILLIAM K. BANKS,

        Plaintiff,

  -against-                                                   **OPINION AND ORDER**
                                                                        06-CV-3414 (SJF) (JMA)

CORRECTIONAL SERVICES CORPORATION,
THE GEO GROUP, and JAMES SLATTERY

        Defendants.
────────────────────────────────────────X

FEUERSTEIN, J.

I.     Introduction

On May 18, 2006, Plaintiff William K. Banks ("Plaintiff" or "Banks") commenced this action against defendants Correctional Services Corporation ("CSC"), The Geo Group ("GEO"), and James Slattery ("Slattery"), in New York State Supreme Court, County of Kings asserting claims of breach of contract, age and race discrimination, unjust enrichment, fraudulent conversion, and accounting. On July 13, 2006, Slattery timely removed the case to this Court pursuant to 28 U.S.C. § 1332. Each defendant (collectively "Defendants") now moves individually for dismissal pursuant to Fed. R. Civ. P. 12(b)(6). For the reasons set forth below, Defendants' motions to dismiss are granted in part and denied in part.

II.    Facts

On July 26, 1989, Banks entered into an agreement with Esmore Incorporated ("Esmore"),

wherein he would be paid three percent (3%) of the gross revenues from rentals by residents referred by the Bureau of Prisons at 998 Myrtle Avenue in Brooklyn, New York.  In addition, Banks was to receive three percent (3%) of gross revenues from all future Bureau of Prisons or state or local correction agency contracts within the State of New York.  The contract obligated Banks to act as a liaison between Esmore and local community and civic groups, and government officials at all levels.  Banks was to be "actively involved in community relations and use [his] best efforts to promote the establishment of" the facilities.[1]  The one (1) page contract, signed by Esmore's president, James Slattery, does not contain any specific provision concerning termination of the contract.  See Contact, dated July 26, 1989, attached to Complaint as Exhibit A.

Esmore was purchased by Defendant CSC in 1997 and Defendants Slattery and CSC continued payments to Banks under the contract.  Complaint at ¶ 14.  Banks contends that some of these were only partial payments.  Id. at ¶ 17.

In November 2005, Slattery sold CSC to Defendant GEO for sixty two million dollars ($62,000,000.000).  Id. at ¶ 20.  CSC is now a wholly owned subsidiary of GEO.  See CSC Fed. R. Civ. P. 7.1 Disclosure.  By letter dated December 14, 2005, Banks was advised by John J. Bulfin, Vice President and Secretary of CSC, of the purchase of CSC by GEO.  See Letter, dated December 14, 2005, attached to Complaint as Exhibit B.  The letter also advised Banks that CSC was terminating his contract "effective immediately."  Id.  Banks was not given prior notice of his termination nor was he offered severance.  Complaint at ¶ 18.

---

[1] The other facility was located at 12-16 East 31 Street, New York, New York.

Banks is a seventy four (74) year old African-American male. Id. at ¶ 10. According to Banks, Defendants told him that he was too old to continue to be under contract with them and that terminating him would make way for "younger blood." Id. at ¶ 29. Banks claims that he was replaced by a younger white male. Id. at ¶ 30. Banks currently resides in Georgia. Id. at ¶ 1.

III. Standard of Review

A motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6) should be granted where "it appears beyond a doubt that plaintiff can prove no set of facts in support of his claim that would entitle him to relief." Cooper v. Parksy, 140 F.3d 433, 440 (2d Cir. 1998). The Court must liberally construe the claims, accept all factual allegations in the complaint as true, and draw all reasonable inferences in favor of the plaintiff. See Koppel v. 4987 Corp., 167 F.3d 125, 128 (2d Cir. 1999). The Court's task "is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." Levitt v. Bear Stearns & Co., 340 F.3d 94, 101 (2d Cir. 2003) (internal citation omitted). The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims. See Villager Pond, Inc. v. Town of Darien, 56 F.3d 375, 378 (2d Cir. 1995).

In deciding the motion, the Court may consider documents referred to in the complaint, documents that the plaintiff relied upon in bringing suit and that are either in the plaintiff's possession or that the plaintiff knew of when bringing suit, or matters of which judicial notice may be taken. Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002). If the interpretation of a contract is at issue, a court is "not constrained to accept the allegations of the complaint in respect of the construction of the Agreement," although all contractual ambiguities must be resolved in the plaintiff's

favor. Int'l Audiotext Network, Inc. v. Am. Tel. and Tel. Co., 62 F.3d 69, 72 (2d Cir. 1995).

IV.     Analysis

   A.     Breach of Contract

"To make out a viable claim for breach of contract a 'complaint need only allege (1) the existence of an agreement, (2) adequate performance of the contract by the plaintiff, (3) breach of contract by the defendant, and (4) damages.'" Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y., 375 F.3d 168, 177 (2d Cir. 2004) (quoting Harsco Corp. v. Segui, 91 F.3d 337, 348 (2d Cir. 1996)). The statute of limitations for a breach of contract action in New York is six (6) years. N.Y.C.P.L.R. § 213(2) (McKinney 2004).

A court should construe a contract as a matter of law only if the contract is unambiguous on its face. See Metro. Life Ins. Co. v. RJR Nabisco Inc., 906 F.2d 884, 889 (2d Cir. 1990). A contract is unambiguous if it "has 'a definite and precise meaning, unattended by danger of misconception in the purport of the [contract] itself, and concerning which there is no reasonable basis for a difference of opinion.'" Sayers v. Rochester Tel. Corp. Supplemental Mgmt. Plan, 7 F.3d 1091, 1095 (2d Cir. 1993) (quoting Breed v. Ins. Co. of N. Am., 46 N.Y.2d 351, 355 (1978)). If a contract is unambiguous, a court is "required to give effect to the contract as written and may not consider extrinsic evidence to alter or interpret its meaning." Consarc Corp. v. Marine Midland Bank, N.A., 996 F.2d 568, 573 (2d Cir. 1993). Contractual language "whose meaning is otherwise plain is not ambiguous merely because the parties urge different interpretations in the litigation." Metro. Life Ins. Co. v.RJR Nabisco, Inc, 906 F.2d 884, 889 (2d Cir. 1990). However, where the contractual language is subject

4

to more than one reasonable interpretation or construction and where extrinsic evidence of the parties' intent exists, the question of the proper interpretation is factual. Consarc Corp., 996 F.2d at 573.

Plaintiff contends that Defendants breached the contract by not making full payments, by assigning the contract without his written consent, and by terminating him. Plaintiff contends that the parties intended the term of the contract be coextensive with the facility's occupation by former prisoners. To support his contention, he cites to the following language: "During the period of occupancy of 988 Myrtle Avenue by residents referred by the United States Bureau of Prisons (BOP), you will be entitled to receive . . ." Plaintiff argues that since the facility is occupied to this date, the contract requires his continued employment.

1. Defendant CSC

CSC contends that there are no specific allegations in the Complaint as to what payments were not made to Plaintiff and no allegations of demands by Plaintiff for additional payment. CSC also argues that there is no language in the contract requiring Plaintiff's written consent prior to assignment. Further, CSC contends that language of the contract does not support Plaintiff's contention that it would be in effect until the facility was no longer occupied or in existence. CSC notes that the contract does not state a term or the manner and circumstances under which the parties may terminate the agreement.

To the extent Plaintiff alleges that he was not fully paid under the contract, Plaintiff has adequately plead a breach of contract claim. Therefore, CSC's motion to dismiss is granted as to those claims barred by the six (6) year statute of limitations but denied as to those claims not barred by the statue of limitations. To the extent Plaintiff alleges that the contract was assigned without his written

consent, CSC's motion to dismiss is granted because the contract is unambiguous and does not require the written consent of Plaintiff prior to assignment.

However, the intent of the parties regarding termination is subject to more than one (1) reasonable interpretation and in the context of a Rule 12(b)(6) motion, the Court is required resolve all contractual ambiguities in favor of Plaintiff. See Int'l Audiotext Network, Inc. v. Am. Tel. and Tel. Co., 62 F.3d 69, 72 (2d Cir. 1995). See also Lipsky v. Commonwealth United Corp., 551 F.2d 887, 897 (2d Cir. 1976) ("Unless the intent is unambiguous from the four corners of the documents, extrinsic evidence of the parties' intent should be received."). Therefore, CSC's motion to dismiss Plaintiff's breach of contract claim involving Plaintiff's termination is denied.

2.  Defendant GEO

Defendant GEO contends that it did not enter into a contract with Plaintiff, never breached any contract or terms of a contract, and did not terminate Plaintiff's contract. GEO contends that these actions were taken by its subsidiary CSC.

Generally, parent and subsidiary corporations are treated as separate legal entities, and a contract by one does not legally bind the other. See Carte Blanche (Singapore), Pte, Ltd. v. Diners Club Int'l, 2 F.3d 24, 26 (2d Cir. 1993). See also Gmerek v. Scrivner, Inc., 634 N.Y.S.2d 299, 299 (App. Div. 4th Dep't. 1995) ("As a general rule, a parent corporation is not liable for the acts of a subsidiary.") (citations omitted). Courts in New York are reluctant to disregard the distinction between corporate entities. See Carte Blanche, 2 F.3d at 26 (citation omitted). A party seeking to hold a parent liable for a subsidiary's breach of contract bears the burden of establishing that the parent

6

corporation "exercised complete domination of [the subsidiary] corporation in respect to the transaction attacked; and . . . that such domination was used to commit a fraud or wrong against the plaintiff which resulted in the plaintiff's injury." Morris v. New York State Dep't of Taxation and Fin., 82 N.Y.2d 135, 141 (1993). See American Fuel Corp. v. Utah Energy Dev. Co., 122 F.3d 130, 134 (2d Cir. 1997).

The Complaint fails to assert any facts which, if true, would demonstrate that GEO dominated CSC's business with respect to its transactions with Plaintiff. See De Jesus v. Sears, Roebuck & Co., Inc., 87 F.3d 65, 69-70 (2d Cir. 1996). Accordingly, GEO's motion to dismiss Plaintiff's entire breach of contract claim is granted.

### 3. Defendant Slattery

Defendant Slattery contends that he cannot be held liable for the alleged breach of contract because he signed the contract in his official capacity as President of Esmore and, as a corporate officer, he is not subject to personal liability.

In New York, corporate officers and shareholders are not liable for corporate debts or breaches of contract unless the corporate veil is pierced. See Cohen v. Koenig, 25 F.3d 1168, 1173 (2d Cir. 1994); Puma Indus. Consulting, Inc. v. Daal Associates, Inc., 808 F.2d 982, 986 (2d Cir. 1987). Plaintiff alleges that Slattery sold the company without notifying him and falsely told him that his job was secure. These allegations are insufficient to pierce the corporate veil and allege a claim against Slattery personally. Plaintiff does not dispute that Slattery was acting in his official capacity as President of Esmore when he signed Plaintiff's contract. Further, Slattery no longer has an ownership interest in CSC and did not terminate Plaintiff's contract. See, e.g., Value Time, Inc. v. Windsor Toys, Inc., 709

F.Supp. 436, 438 (S.D.N.Y. 1989) (holding that a corporate officer could not be held liable for the corporation's alleged breach of contract where he was acting in his official capacity as an officer); Maranga v. McDonald & T. Corp., 777 N.Y.S.2d 732, 733 (App. Div. 2d Dep't. 2004) ("Where a principal of a corporation expressly signs a contract in his or her capacity as an officer of the corporation, unless he or she purports to personally bind him or herself, he or she will not be held personally liable under the contract."). Accordingly, Slattery's motion to dismiss Plaintiff's entire breach of contract claim is granted.

B. Age and Race Discrimination

Plaintiff alleges age and race discrimination under New York State Human Rights Law, N.Y. Exec. L. § 296[2] ("NYSHRL") and New York City Administrative Code § 8-107[3] ("NYCHRL"). Claims brought under NYSHRL and NYCHRL are analyzed under the framework of Title VII claims. See Cruz v. Coach Stores, Inc., 202 F.3d 560, 565 n. 1 (2d Cir. 2000) ("Our consideration of claims brought under the state and city human rights laws parallels the analysis used in Title VII claims."). See also Petrosino v. Bell Atlantic, 385 F.3d 210, 220 n. 11 (2d Cir. 2004) ("Our rulings as to the federal

---

[2] N.Y. Exec. Law § 296 provides:

It shall be an unlawful discriminatory practice:
(a) For an employer or licensing agency, because of the age, race, creed, color, national origin, sexual orientation, military status, sex, disability, predisposing genetic characteristics, or marital status of any individual, to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment.

[3] New York City Administrative Code § 8-107 provides:

It shall be an unlawful discriminatory practice:
(a) For an employer or an employee or agent thereof, because of the actual or perceived age, race, creed, color, national origin, gender, disability, marital status, sexual orientation or alienage or citizenship status of any person, to refuse to hire or employ or to bar or to discharge from employment such person or to discriminate against such person in compensation or in terms, conditions or privileges of employment.

8

discrimination claims pertain equally to the state and local claims.").

Defendants argue that Plaintiff's discrimination claims must be dismissed because he was not an "employee" for purposes of the anti-discrimination statutes but an independent contractor and therefore not entitled to protection under NYSHRL and NYCHRL.

Independent contractors are not employees for the purpose of NYSHRL. See Eisenberg v. Advance Relocation & Storage, Inc., 237 F.3d 111, 113 (2d Cir. 2000). However, independent contractors fall within the protections of NYCHRL if they are "natural persons" who "carry out work in furtherance of an employer's business enterprise." NYCHRL § 8-102(5). See also O'Neill v. Atlantic Security Guards, 671 N.Y.S.2d 976 (App. Div. 1st Dep't. 1998); Lavergne v. Burden, 665 N.Y.S.2d 272 (App. Div. 1st Dep't. 1997).

Whether Plaintiff was an employee or an independent contractor cannot be determined on the face of the Complaint. Defendant's argument that Plaintiff was an independent contractor is more appropriately made in a motion for summary judgment when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, can be examined to determine whether there is a genuine issue of material fact and whether the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(c). "[A] determination that an employer-employee relationship exists may rest upon evidence that the employer exercises either control over the results produced or over the means used to achieve the results." Scott v. Massachusetts Mut. Life Ins. Co., 86 N.Y.2d 429, 433 (1995) (citation omitted). Therefore, dismissal on this ground is denied.

To survive a motion to dismiss, an employment discrimination claim need only satisfy the basic requirements of Rule 8 of the Federal Rules of Civil Procedure for a "short and plain statement of the

claim." Fed. R. Civ. P. 8(a). See Swierkiewicz v. Sorema N. A., 534 U.S. 506, 512-13 (2002). "This simplified notice pleading standard relies on liberal discovery rules and summary judgment motions to define disputed facts and issues and to dispose of unmeritorious claims." Id. at 512. So long as the complaint "give[s] the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests" it is sufficient. Id. (internal citations and quotations omitted). The complaint need not "contain specific facts establishing a prima facie case of discrimination." Id. at 508.

However, "a plaintiff must allege, as the Supreme Court has held, those facts necessary to a finding of liability . . . [and] a plaintiff's allegations, accepted as true, must be sufficient to establish liability." Amron v. Morgan Stanley Inv. Advisors Inc., 464 F.3d 338, 343-44 (2d Cir. 2006). In other words, "while the pleading standard is a liberal one, bald assertions and conclusions of law will not suffice." Id. at 344 (internal citations and quotations omitted).

1. Age Discrimination

Plaintiff's Complaint alleges that Plaintiff was discriminated against because of his age. Plaintiff specifically alleges that he is 74 years old and he was terminated because of his age; that he was told that he was "too old" to continue working and that letting him go would make way for "younger blood;" and that "upon information and belief" he has been replaced by a younger employee. Complaint at ¶ 10, 29, 30. Accordingly, the Complaint provides Defendants with fair notice of the basis for Plaintiff's age discrimination claim and thus comports with the requirements of Rule 8. See Cellamare v. Millbank, Tweed, Hadley & McCloy LLP, No. 03-CV-39, 2003 WL 22937683, at *5 (E.D.N.Y. Dec. 2, 2003) (employee who claimed that she was "in [her] 40's," that employer "has been hiring younger people at a lower rate," and that she was terminated because of her age, although she did not

specify ages of those "younger people," alleged sufficient facts to support claim of age discrimination); Moskowitz v. Alliance Capital Mgmt., Inc., No. 03-CIV-4390, 2003 WL 22427845, at *1 (S.D.N.Y. Oct. 24, 2003) (employee who claimed that he was 60 years old at time of his termination, that he was discharged because of age, and that employer's nepotism policies were applied to him as a means of singling him out because of his age, alleged sufficient facts to support claim of age discrimination).

      a.  Defendant CSC

It is undisputed that CSC terminated Plaintiff. Therefore, to the extent Plaintiff has alleged a valid age discrimination claim, CSC is potentially liable. As a result, CSC motion to dismiss Plaintiff's age discrimination claim is denied.

      b.  Defendant GEO

GEO contends that it did not terminate Plaintiff and therefore, it cannot be held liable for any discriminatory conduct. However, in contrast to the general rule that a parent and subsidiary are treated as separate legal entities for breach of contract actions, as a parent company, GEO may be liable for the discriminatory conduct of CSC, its subsidiary. In order for a parent and subsidiary to be treated as a single enterprise for NYSHRL and NYSCRL liability there must be evidence of "(1) interrelation of operations, (2) centralized control of labor relations, (3) common management, and (4) common ownership or financial control." Cook v. Arrowsmith Shelburne, Inc., 69 F.3d 1235, 1240 (2d Cir. 1995) (quoting Garcia v. Elf Atochem N. Am., 28 F.3d 446, 450 (5th Cir. 1994) (citations omitted)). The second factor is the most important factor. Id. Since the Court does not have any information regarding these four (4) factors and how they affect Plaintiff's claim, GEO's motion to

dismiss Plaintiff's age discrimination claim is denied.

      c.  Defendant Slattery

  Pursuant to NYHRL § 296 an individual may be liable as either an employer or as an "aider or abetter." See NYHRL §§ 296(1), (6); Tomka v. Seiler Corp., 66 F.3d 1295, 1313 (2d Cir. 1995), abrogated on other grounds by Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, (1998); Prince v. Madison Square Garden, 427 F. Supp.2d 372, 384 (S.D.N.Y. 2006). NYSHRL makes it unlawful for "an employer or licensing agency, because of age, race, creed, color, national origin, sexual orientation, military status, sex, disability, genetic predisposition, or carrier status, or marital status of any individual, . . . to bar or discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment." NYSHRL § 296(1)(a). Individual liability under Section 296(1) has been limited to individuals with ownership interest or "supervisors, who themselves, have the authority to 'hire and fire employees.'" Gentile v. Town of Huntington, 288 F. Supp.2d 316, 321 (E.D.N.Y. 2003) (quoting Tomka, 66 F.3d at 1317). However, Section 296(6) makes it unlawful "for any person to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this article, or to attempt to do so." NYSHRL § 296(6). According to the Second Circuit, this language imposes individual liability on "a defendant who actually participates in the conduct giving rise to a discrimination claim," irrespective of whether the individual possesses power to do more than carry out personnel decisions made by others. Tomka, 66 F.3d at

12

1317.[4]

NYCHRL also provides for individual liability. See Feingold v. New York, 366 F.3d 138, 158 (2d Cir. 2004). NYCHRL makes it unlawful for "an employer or an employee or agent thereof, because of the actual or perceived age, race . . . of any person . . . to discharge from employment such person or to discriminate against such person." NYCHRL § 8-107(1)(a). Section 8-107(1)(a) thus provides for the individual liability of employees regardless of ownership or decision-making power. Murphy v. ERA United Realty, 674 N.Y.S.2d 415, 417 (App. Div. 2d Dep't. 1998). Section 8-107(6) further provides that "[i]t shall be an unlawful discriminatory practice for any person to aid, abet, incite, compel, or coerce the doing of any of the acts forbidden under this chapter, or to attempt to do so." NYCHRL § 8-107(6). This language is "virtually identical" to the language of NYSHRL § 296(6). Dunson v. Tri-Maintenance & Contractors, Inc., 171 F. Supp.2d 103, 113-114 (E.D.N.Y. 2001). See McCoy v. City of New York, 131 F. Supp.2d 363, 375 (E.D.N.Y. 2001) (applying the same standard to claims under § 296(6) and § 8-107(6)).

Plaintiff has failed to allege valid claims for individual liability under either NYSHRL or NYCHRL. Slattery was the owner of CSC and therefore had the authority to hire and fire Plaintiff. Nevertheless, Plaintiff was terminated by CSC after Slattery had sold his interest in the company. Further, Plaintiff has not alleged any facts which would support the allegation that Slattery aided or abetted CSC in terminating his employment. In fact, Plaintiff has not alleged that Slattery actually

---

[4] See Patane v. Clark, 435 F. Supp.2d 306, 313 (S.D.N.Y. 2006) (noting that although some state courts have disagreed with Tomka, federal courts in this circuit are bound to follow the Second Circuit's ruling on this matter).

participated in any of the allegedly discriminatory conduct. Accordingly, Slattery's motion to dismiss Plaintiff's age discrimination claim is granted.

2. Race Discrimination

Plaintiff's Complaint also alleges race discrimination. Plaintiff is African-American. Complaint at ¶ 10. Plaintiff alleges that he was replaced by a white male. Id. at ¶ 30. However, even under the liberal pleading standards of Rule 8, Plaintiff's allegations are not sufficient to establish liability or provide Defendants with fair notice of the basis for his race discrimination claims. Plaintiff alleges only that "upon information and belief" he was replaced by a white male, but otherwise provides no indication that his race played a role in his termination. Id. See Straker v. Metropolitan Transit Authority, 333 F. Supp.2d 91, 102 (E.D.N.Y. 2004) (a count "which contains no facts supporting the grounds upon which [the] claim of race discrimination rests, must . . . be dismissed"). Accordingly, Defendants' motions to dismiss Plaintiff's race discrimination claim are granted.

C. Unjust Enrichment

"To prevail on a claim for unjust enrichment in New York, a plaintiff must establish (1) that the defendant benefitted; (2) at the plaintiff's expense; and (3) that equity and good conscience require restitution." Beth Israel Medical Center v. Horizon Blue Cross and Blue Shield of New Jersey, Inc., 448 F.3d 573, 586 (2d Cir. 2006) (citation omitted). "The 'essence' of such a claim 'is that one party has received money or a benefit at the expense of another.'" Kaye v. Grossman, 202 F.3d 611, 616 (2d Cir. 2000) (quoting City of Syracuse v. R.A.C. Holding, Inc., 685 N.Y.S.2d 381, 381 (App. Div. 4th Dep't. 1999)). However, the existence of an enforceable written contract precludes recovery for unjust enrichment. See Mid-Hudson Catskill Rural Migrant Ministry, Inc. v. Fine Host Corp., 418 F.3d

168, 175 (2d Cir. 2005); Clark-Fitzpatrick, Inc. v. Long Island R. Co., 70 N.Y.2d 382, 389 (1987).

Plaintiff alleges that Defendants were unjustly enriched because they benefitted from Plaintiff's establishment, promotion, and preservation of the good will of the facilities and that due to financial expenditures,[5] and investment of his time and effort, CSC became a successful company worth sixty two million dollars ($62,000,000.00). Complaint at ¶ 23.

The scope of the contract that Plaintiff had with Defendants covers the dispute between the parties. The contract specified Plaintiff's duties and his salary. Plaintiff's job was to be actively involved in the community and promote the establishment of the facilities, thereby increasing the facilities' good will. As a result, he was paid a percentage of the monies from all Bureau of Prisons or state or local correction agency contracts within the State of New York. Plaintiff now seeks to recover additional sums from Defendants for performing his duties under the contract, claiming that he increased the good will of the company thereby increasing its resale value. Plaintiff has not alleged that he performed "'additional services' [ ] 'so distinct from the [contractual] duties . . . that it would be unreasonable for the [defendant] to assume that they were rendered without expectation of further pay.'" U.S. East Telecomms., Inc. v. U.S. West Communications Servs., Inc., 38 F.3d 1289, 1298 (2d Cir. 1994) (quoting O'Keeffe v. Bry, 456 F. Supp. 822, 831 (S.D.N.Y. 1978) (further citation omitted)). Therefore, Plaintiff is not entitled to recover on an unjust enrichment theory outside the contract and Defendants' motions to dismiss Plaintiff's unjust enrichment claim are granted.

D.      Fraudulent Conversion

---

[5] Plaintiff does not allege that he personally financed these expenditures.

Under New York Law, "[c]onversion is any unauthorized exercise of dominion or control over property by one who is not the owner of the property that interferes with and is in defiance of a superior possessory right of another in the property." Schwartz v. Capital Liquidators, Inc., 984 F.2d 53, 53 (2d Cir. 1993) (quoting Meese v. Miller, 436 N.Y.S.2d 496, 500 (App. Div. 4th Dep't. 1981). A conversion claim must allege that the contested acts "are unlawful or wrongful as distinguished from acts that are a mere violation of contractual rights." Fraser v. Doubleday & Co., 587 F. Supp. 1284, 1288 (S.D.N.Y. 1984). "Put another way, a plaintiff may not recast a contract-based claim as a tort claim 'where plaintiff is essentially seeking enforcement of the [contractual] bargain.'" ESI, Inc. v. Coastal Power Prod. Co., 995 F. Supp. 419, 432 (S.D.N.Y. 1998) (quoting In re Chateaugay Corp., 10 F.3d 944, 958 (2d Cir. 1993)).

Plaintiff alleges that Defendants CSC and Slattery fraudulently converted his property, by the sale and assignment of CSC without regard to his contract; that he was fraudulently told that his job was secure; that he still has the right to be compensated during the occupancy of the Myrtle Avenue facility; and that CSC and Slattery "illegally" sold the business to Defendant GEO without preserving his rights under his contract.

Although Plaintiff couches his claim in terms of conversion, he is essentially seeking enforcement of his contract. Since Plaintiff has failed to plead a claim distinct from his breach of contract claim, Defendants' motions to dismiss Plaintiff's fraudulent conversion claim are granted.[6]

---

[6] Defendants also argue that Plaintiff's fraudulent conversion claim fails because it was pled with insufficient particularity and, thus, does not comport with Rule 9(b) of the Federal Rules of Civil Procedure. See Fed. R. Civ. P. 9(b) ("[I]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity."). In order to comply with the heightened pleading requirements set forth in Rule 9(b), "the complaint must (1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3)

### E. Accounting

To plead an equitable action for an accounting under New York law, a plaintiff must allege either a fiduciary or confidential relationship with the defendant. Leveraged Leasing Admin. v. Pacificorp Capital, Inc., 87 F.3d 44, 49 (2d Cir. 1996) (citing Palazzo v. Palazzo, 503 N.Y.S.2d 381, 384 (App. Div. 1st Dep't. 1986). See Bezuszka v. L.A. Models, Inc., No. 04-CIV- 7703, 2006 WL 770526, at *17 (S.D.N.Y. Mar. 24, 2006) (under New York law, a plaintiff seeking an accounting "must allege both a fiduciary relationship between the plaintiff and defendant and a breach of that fiduciary by the defendant."). Plaintiff has not alleged that any defendant was his agent or fiduciary.

In some cases, New York courts have held that a fiduciary or confidential relationship is not necessary to obtain judicial relief by treating the action for an accounting as an action at law for monetary relief, and not as an equitable action for an accounting. See e.g., Arrow Communications Labs. v. Pico Prods. Inc., 632 N.Y.S.2d 903, 905 (App. Div. 4th Dep't. 1995) ("Where a party seeks an accounting, but the primary demand is for monetary damages, '[t]he accounting is merely a method to determine the amount of the monetary damages. The action therefore sounds in law and not in equity.'") (citation omitted).

Because Plaintiff has sought money damages in his breach of contract claim, and because

---

state where and when the statements were made, and (4) explain why the statements were fraudulent." Mills v. Polar Molecular Corp., 12 F.3d 1170, 1175 (2d Cir. 1993). See Lerner v. Fleet Bank, N.A., 459 F.3d 273, 290 (2d Cir. 2006). Where multiple defendants are involved, the complaint is required to specifically describe each defendant's alleged participation in the fraud. DiVittorio v. Equidyne Extractive Indus., Inc., 822 F.2d 1242, 1247 (2d Cir. 1987). Because the Court disposes of Plaintiff's fraudulent conversion claim on the merits, it will not address whether Plaintiff meets the pleading requirements set forth in Rule 9(b).

discovery as to the measure of damages would be available to him if he were to prevail on that claim, he can obtain all the information he seeks in his existing claim at law.[7] Accordingly, no purpose would be served by treating Plaintiff's equitable accounting claim as an additional, and duplicative, action at law. Defendants' motions to dismiss Plaintiff's claim for an accounting are granted.

V.      Conclusion

For the reasons set forth above Defendants motions to dismiss are GRANTED in part and DENIED in part. The following claims remain against Defendant CSC: unpaid money under the contract, unlawful termination of the contract, and age discrimination. The following claim remains against Defendant GEO: age discrimination. The complaint is dismissed in its entirety as to Defendant Slattery. The remaining parties are directed to appear for a conference at 225 Cadman Plaza East, Brooklyn, N.Y. on ***Monday, March 12, 2007, at 10:30 a.m.***

IT IS SO ORDERED.

_____
Sandra J. Feuerstein
United States District Judge

Dated:   February 15, 2007
Brooklyn, New York

---

[7] The Court has discretion to bifurcate the proceedings into liability and damages phases, to minimize any unnecessary discovery.

Copies:

Laura M. Dilimetin
Dilimetin & Dilimetin
47 Plandome Road
Manhasset, NY 11030

John Joseph McCarthy, III
McCarthy Law Firm, PLLC
1120 Avenue of the Americas
Suite 4006
New York, NY 10036